1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10
11

MIKE TAITUAVE,

Case No. EDCV 18-01106-JVS (RAO)

12

Plaintiff,

13

v.

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE [106, 111]**

14

NEIL MCDOWELL, et al.,

15

Defendants.

16
17
18
19

This Report and Recommendation is submitted to the Honorable James V. Selna, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

20
21
22
23
24
25
26
27

Plaintiff Mike Taituave, a California state prisoner proceeding *pro se*, alleges violations of his civil rights arising from a search conducted at Ironwood State Prison on the evening of June 13 and into the morning of June 14, 2017.  Ironwood State Prison correctional officers conducted a mass cell search that entailed the removal of inmates from their cells followed by strip searches and subsequent transportation of the inmates by van to a visiting room where the inmates where held until the cell searches were completed.  Plaintiff was one of inmates who was removed from his cell, strip searched, and transported to the visiting room.  In the course of these

28

events, Plaintiff alleges that certain named Defendants: (1) strip-searched him in full view of other inmates and correctional officers and in the presence of a female correctional officer in violation of his rights under the Fourth Amendment; (2) confined him for over 30 minutes in a hot van in violation of the Eighth Amendment; and (3) confined him in mechanical restraints in a cold visiting room for over five hours in violation of the Eighth Amendment.  Second Amended Complaint ("SAC"), Dkt. No. 17 at 9-24.

Plaintiff also alleges that on August 31, 2017, in retaliation for Plaintiff filing grievances, Defendant Vasquez conducted a heavy-handed search of his cell and then issued an unfounded Rules Violation Report ("RVR").  SAC at 26.

Defendants have moved for summary judgment.  Dkt. Nos. 106, 111.  For the reasons set forth below, the Court recommends that Defendants' motions for summary judgment be granted as to the merits of Plaintiff's claims and the action be dismissed.[1]

## I.   **PROCEDURAL HISTORY**

The SAC, the operative pleading, alleges violations pursuant to 42 U.S.C. § 1983, and names the following defendants, each of whom is sued in his individual capacity only: Warden Neil McDowell; Correctional Lieutenant F. Alvarez[2]; Sgt. J. Frias; Sgt. F. Duenas; and Correctional Officers B. Wilson, A. Allen, and M. Vasquez (collectively "Defendants," except as noted).[3]  SAC at 3-8.

---

[1]   Defendant Allen and the other Defendants (collectively) have filed separate summary judgment motions.  Dkt. Nos. 106, 111.  The Court addresses the motions separately only to the extent that material differences exist between them.

[2]   Although Plaintiff identifies him as Defendant Alverez in the complaint, the defendant's correct last name appears to be Alvarez and he is referred to as such throughout this report.

[3]   Plaintiff also named Correctional Officers Rossolillo, Messerli, Briones, Coon, Steele, Navarro, Abril, and Captain Pierce as defendants in the SAC, but all claims against these individuals were subsequently dismissed by the Court.  *See* Dkt. No. 77.

2

After the Court granted Defendants' motion to dismiss with respect to certain claims (Dkt. Nos. 70, 77), on October 9, 2018, Defendant Allen filed his Answer. Dkt. No. 80. On January 8, 2021, Defendants McDowell, Alvarez, Wilson, Vasquez, Frias, and Duenas filed an Amended Answer.

On February 10, 2022, Defendant Allen filed a motion for summary judgment ("Allen Motion"). Dkt. No. 106. On February 18, 2022, the remaining Defendants collectively filed a motion for summary judgment ("Defendants' Motion"). Dkt. No. 111. In support of his motion, Defendant Allen filed a Statement of Uncontroverted Facts and Conclusions of Law ("Allen SUF") and a Declaration of A. Allen. Dkt. Nos. 106-5, 106-6. In support of their separate motion, the remaining Defendants filed a Statement of Uncontroverted Facts and Conclusions of Law ("Defs SUF"), Dkt. No. 111-1; and Declarations of Gregory Young, H. E. Moseley, F. Alvarez, F. Duenas, J. Frias, N. McDowell, K. Messerli, and M. Vasquez, Dkt. Nos. 111-3-111-14. Defendants also provided a *Rand*[4] notice. Dkt. No. 111-2.

On March 18, 2022, Plaintiff filed an Opposition to the Allen Motion, along with a declaration and statement of genuine disputes ("Pl SDF"). Dkt. Nos. 118, 118-1, 118-2. On April 26, 2022, Plaintiff filed an opposition to Defendants' Motion, also along with a declaration and statement of genuine disputes ("Pl SDF"). Dkt. Nos. 123, 123-1, 123-2.

On March 29, 2022, Defendant Allen filed a Reply in support of his summary judgment motion and objections to Plaintiff's evidence. Dkt. No. 119. On May 10, 2022, the remaining Defendants filed a Reply in support of their summary judgment motion. Dkt. No. 124.

## II.    LEGAL STANDARD FOR RULE 56 MOTIONS

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[4] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" only if a sufficient evidentiary basis exists upon which a reasonable jury could find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law.  *Id.* at 248.

The moving party bears the initial responsibility of presenting the basis of its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once the moving party meets its initial burden, the burden shifts to the opposing party to demonstrate the existence of a genuine issue of material fact with specific facts.  *Anderson*, 477 U.S. at 248-49.  The parties must support their assertions that a material fact cannot be or is genuinely disputed by (1) citing materials in the record, (2) showing that materials cited do not establish an absence or presence of genuine dispute, or (3) showing that the adverse party lacks admissible evidence to support its factual position.  *See* Fed. R. Civ. P. 56(c)(1)(A)-(B).  A party may also object to material cited on the basis that it "cannot be presented in a form that would be admissible in evidence," *see* Fed. R. Civ. P. 56(c)(2).  An opposing party cannot rely on the "mere existence of a scintilla of evidence."  *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the Court must examine all the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *Id.* at 255.  The Court does not make credibility determinations, nor does it weigh conflicting evidence.  *Anderson*, 477 U.S. at 255.  But "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

///

///

### III.   **EVIDENCE SUBMITTED BY THE PARTIES**

In deciding the summary judgment motions, the Court will consider only factual assertions that are properly supported in accordance with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 56(c)(1).  The Court may consider only admissible evidence in ruling on a summary judgment motion.  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The Court is concerned with the admissibility of relevant facts, not the form presented in a motion.  *See* Fed. R. Civ. P. 56(c)(2) (permitting a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence").  However, the Ninth Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (internal quotation marks omitted).

"In general, inadmissible hearsay evidence may not be considered on a motion for summary judgment."  *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 345 n.4 (9th Cir. 1995).  However, "a district court may consider hearsay evidence submitted in an admissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as live testimony."  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).  Courts generally require some sort of showing that a party would be able to submit the hearsay evidence in an admissible form at trial.  *See, e.g.*, *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1293 (9th Cir. 2019) (finding district court did not abuse its discretion in overruling hearsay objections where the defendant certified at a hearing that it would be able to submit the hearsay evidence in an admissible form at trial).

"[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."  *Burch v. Regents of Univ. of Cal.*, 433 F.

Supp. 2d 1110, 1119 (E.D. Cal. 2006).   "[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment." (emphasis in original)).  *Id.*

**A.      Evidence Submitted by Defendants**

Defendants have submitted declarations, each dated and signed under penalty of perjury.  *See* Dkt. Nos. 106-6; 111-8-112-14.  These declarations comply with 28 U.S.C. § 1746 and may be considered to the extent that they are based on personal knowledge and set forth facts and evidence that are otherwise admissible.  *See* Fed. R. Civ. P. 56(c)(4).  Defendants have also submitted the transcript of Plaintiff's March 16, 2021 video deposition testimony, *see* Dkt. Nos. 106-3; 111-4, ("Plaintiff's Depo."), which is admissible on summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(A). Defendants have submitted documents from Plaintiff's Inmate File relating to a Rules Violation Report regarding an incident on July 31, 2017 ("RVR").  *See* Dkt. No. 111-5.  Additionally, Defendants have submitted copies of Plaintiff's Appeal History Report, as well as Plaintiff's appeals of grievances to the Office of Appeals ("OOA") after June 13, 2017, concerning any of the claims raised in this action. *See* Dkt. Nos. 111-6; Dkt. No. 116-7, Exhs. 1-6.

**B.      Evidence Submitted by Plaintiff**

In opposition to each summary judgment motion, Plaintiff has submitted a declaration that also complies with 28 U.S.C. § 1746, along with exhibits that consist of excerpts of Plaintiff's March 16, 2021 deposition, copies of Plaintiff's medical records, and copies Plaintiff's grievances and appeals.  Dkt. Nos. 118, 118-1; 123, 123-1.

## IV.   <u>FACTS</u>

**A.      Undisputed Facts**

On the evening of June 13, 2017, prison officers removed approximately 30 inmates from their cells so that their cells could be searched and the inmates strip

6

searched.  Defs SUF No. 6.  The inmates were escorted to the back of the building where small groups of under ten inmates underwent strip searches.  Defs SUF No. 33.  The inmates were then placed in vans to be transported to another building, where they were held in handcuffs in a visiting room while the cell searches were being conducted.  Defs SUF No. 35.

Defendant Wilson was involved in transporting the inmates in the van containing Plaintiff.  Defs SUF Nos. 50, 51.  The doors of the van were periodically opened to allow other inmates to enter and exit.  Defs SUF No. 53.  Plaintiff stated that he was kept in the van with Defendant Wilson for 30 to 40 minutes following a two-minute drive to the visiting room and after ten minutes waiting for the van to depart.  Defs SUF No. 93.  Plaintiff suffered from dehydration, meaning he wanted something to drink and felt unpleasant and hot from being in the van, but was not diagnosed with dehydration.  Defs SUF No. 94.

The inmates were placed in handcuffs prior to arriving at the visiting room.  Allen SUF No. 14.  Once in the visiting room, they were instructed to straddle the chairs.  Allen SUF No. 14; Defs SUF No. 37.  Defendants Allen and Wilson were assigned to secure and protect the inmates in the visiting room.  Allen SUF No. 13; Defs SUF No. 55.  There were approximately 30 inmates and two correctional officers in the visiting room while Plaintiff was confined there.  Defs SUF No. 55.

While confined in the visiting room, Plaintiff was seen by medical personnel, was allowed to be uncuffed and stretch out, was given the opportunity to use the restroom but did not ask to do so, and made no complaints about the air conditioning.  Allen SUF Nos. 5-8.

Prior to the mass search initiated on June 13, 2017, there were multiple incidents of inmates at Ironwood State Prison avoiding searches and assaulting staff members in the process.  Defs SUF No. 7.  There were also incidents before June 13, 2017, of inmate overdoses on controlled substances.  Defs SUF Nos. 8, 27.  Defendant McDowell authorized an operation to be carried out on June 13, 2017, to

search cells for contraband. Defs SUF Nos. 15, 27. Defendant McDowell delegated the planning of the operation to Investigative Services Unit staff. Defs SUF No. 16. Defendant McDowell was not present for any part of the operation that was carried out on June 13-14, 2017. Defs SUF No. 21. Defendant Frias was present during the mass search, but did not participate in the actual searches. Defs SUF No. 95. Defendant Duenas was also present during the mass search. Defs SUF No. 96. Defendant Duenas provided security and assisted the Incident Commander during the operation. Defs SUF No. 96.

The operation resulted in contraband, including drugs and cell phones, being found in some cells. Defs SUF No. 32. A cell phone was found in Plaintiff's cell. Defs SUF Nos. 24, 32.

Contraband had previously been found in Plaintiff's cell on at least one occasion. Allen SUF No. 12; Defs SUF No. 11. On March 17, 2017, Plaintiff received a Serious RVR for use of a controlled substance after testing positive for the presence of cannabinoids (THC) following a urinalysis test. Defs SUF No. 12. Plaintiff admitted it was possible that he was included in the mass search operation because he had a history of having contraband in his cell. Defs SUF No. 13.

CDCR policy requires correctional officers to conduct random cell searches. Defs SUF No. 81. Defendant Vasquez regularly conducted cell searches in the buildings to which he was assigned. Defs SUF No. 83. On July 31, 2017, approximately six weeks after the mass search was conducted, Defendant Vasquez searched Plaintiff's cell and found contraband, specifically a television belonging to another inmate. Defs SUF Nos. 47, 84, 85, 86. At the time, Plaintiff was on disciplinary status that prohibited him from having any entertainment devices. Defs SUF Nos. 48, 87. Because Plaintiff was not permitted to have a television, Defendant Vasquez issued a Serious RVR. Defs SUF No. 48. Plaintiff was found guilty of "borrowing of personal property" related to the July 31, 2017 RVR, and was assessed a penalty of five days confinement to quarters. Defs SUF No. 88.

**B.     Disputed Facts**

Defendants contend that the June 13-14, 2017 operation was not carried out "as a punitive action or to send the inmates a message."  Defs SUF No. 22.  Plaintiff disputes this assertion and contends that Defendants McDowell, Frias, and Duenas were aware of the unconstitutional searches during the operation.  Pl SDF Nos. 2, 3, Dkt. No. 123-2.  Plaintiff also contends that there is a genuine dispute of fact as to whether a female correctional officer and/or other inmates witnessed him being strip-searched in the open.  Pl SDF Nos. 4, 5, Dkt. No. 123-2.

With respect to the conditions in the van used to transport inmates, Defendants contend that the van operated by Defendant Wilson had a working air conditioner, the air conditioner was on and the doors to the van were opened periodically to allow air to circulate.  Defs SUF Nos. 52, 53.  Defendants further assert that no inmate told Defendant Wilson that there was no air in the van or that they were having trouble breathing.  Defs SUF No. 54.  Plaintiff asserts a genuine dispute of fact exists regarding these contentions.  Pl SDF Nos. 11, 12, Dkt. No. 123-2.

As to the conditions of the visiting room and the manner in which the inmates were restrained, Defendant Allen states that he has no recollection of any complaints from inmates in the visiting room regarding handcuffs and that the inmates were advised they could use the restroom, get a drink of water, and stretch out.  Allen SUF Nos. 15, 16, 17.  Plaintiff counters that he and other inmates were not allowed to stretch out and that water was not immediately available upon request.  Pl SDF Nos. 2, 3, Dkt. No. 118-2; Pl SDF No. 7, Dkt. No. 123-2.  Further, medical staff were not in the visiting room the entire time, but instead only arrived after the inmates had been in the visiting room for five hours.  Pl SDF No. 9, Dkt. No. 123-2.  Only after Plaintiff informed the medical staff that he was in pain did Defendants Allen and Wilson remove his handcuffs.  Pl SDF No. 6, Dkt. No. 118-2; Pl SDF No. 9, Dkt. No. 123-2.  Further, Plaintiff contends that the inmates were cuffed and instructed to
///

9

straddle chairs in the visiting room for punitive reasons, not because of security concerns.  Pl SDF No. 1, Dkt. No. 118-2.

Finally, with respect to Defendant Vasquez's July 31, 2017 search of Plaintiff's cell, Plaintiff alleges a genuine dispute exists as to whether Defendant Vasquez was retaliating against Plaintiff for filing grievances.  Pl SDF No. 10, Dkt. No. 123-2.

## V.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

#### 1.  Legal Standard

Under the Prison Litigation Reform Act ("PLRA"), a prisoner cannot bring an action regarding prison conditions under § 1983 "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).  The PLRA requires "proper exhaustion," meaning an inmate must comply with prison grievance policy deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90-91, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

"[F]ailure to exhaust is an affirmative defense" and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).  Unless a failure to exhaust is clear on the face of the complaint, the defense must be raised in a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and defendants must produce evidence proving failure to exhaust.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied sub nom. Scott v. Albino*, 135 S. Ct. 403 (2014).  A defendant is entitled to summary judgment if "undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust."  *Id.*

1  The burden is on the defendant "to prove that there was an available

2  administrative remedy, and that the prisoner did not exhaust that available remedy."

3  *Id.* at 1172. If the defendant carries that burden, then "the burden shifts to the prisoner

4  to come forward with evidence showing that there is something in his particular case

5  that made the existing and generally available administrative remedies effectively

6  unavailable to him." *Id.* The ultimate burden of proof, however, remains with the

7  defendant. *Id.*

8  An exception to the exhaustion requirement exists where the administrative

9  remedy process is rendered unavailable to a prisoner. *See Ross v. Blake*, 578 U.S.

10  632, 136 S. Ct. 1850, 1858-59, 195 L. Ed. 2d 117 (2016). In *Ross*, the Supreme Court

11  identified three kinds of circumstances in which an administrative remedy is not

12  capable of use: (1) where the remedy operates as a "simple dead end" because officers

13  are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2)

14  where the administrative scheme is "so opaque that it becomes, practically speaking,

15  incapable of use"; and (3) "when prison administrators thwart inmates from taking

16  advantage of a grievance process through machination, misrepresentation, or

17  intimidation." *Id*. at 643-44.

18  2. The Parties' Arguments

19  Defendants argue that Plaintiff's claims relating to the June 13, 2017 mass

20  search should be dismissed because Plaintiff failed to exhaust his available

21  administrative remedies.  Defs.' Mot. at 12.  Defendants contend that a

22  comprehensive administrative appeals process was available. *Id.* at 13. Plaintiff was

23  aware of the inmate appeals process as he filed a grievance related to the mass search

24  operation and exhausted other appeals in the past. *Id.* Although Plaintiff filed an

25  initial grievance and filed an appeal with the Third Level of Appeals ("Third Level"),

26  Plaintiff did not receive a final response from the Third Level. *Id.* at 14. Plaintiff's

27  appeal was screened out for being timely. *Id.* Plaintiff then appealed the screening

28  out, and the Third Level granted that appeal. *Id.* Plaintiff was informed that the

11

1  appeal would be accepted if it was submitted consistent with the rules and
2  regulations, but Plaintiff never re-submitted the appeal. *Id.* at 14-15.

3      Plaintiff responds that following the erroneous cancellation of his Third Level
4  appeal and the successful appeal of that cancellation, Plaintiff timely re-submitted
5  the appeal but never received a response. Pl. Opp'n to Defs.' Mot. at 3-4.

6      Defendants reply that Plaintiff provides no evidence that he re-submitted his
7  appeal with the necessary supporting papers. Defs.' Reply at 3.

8      3. Analysis

9      It is undisputed that California state regulations during the relevant period
10 provided an administrative remedy to state prisoners through the grievance appeals
11 process and that Plaintiff utilized that process for his grievance related to the mass
12 search (Grievance Log No. ISP-17-00720) through the Second Level Response. Defs
13 SUF No. 63; Moseley Decl. ¶ 12, Dkt. No. 111-6; Moseley Decl., Ex. 5, Dkt. No.
14 111-7 at 74-90. There is also no dispute that Plaintiff attempted to appeal his
15 grievance through the Third Level, but that appeal (Appeal Log. No. 1711793) was
16 screened out as untimely. Defs SUF Nos. 68, 70; Moseley Decl., Ex. 5. There is no
17 dispute that Plaintiff did not receive a ruling on the merits of this grievance at the
18 Third Level of Appeal. Moseley Decl. ¶ 13; Taituave Decl. ¶ 45, Dkt. No. 123-1. In
19 light of these undisputed facts, Defendants have met their initial burden to prove that
20 there was an available administrative remedy and Plaintiff did not exhaust that
21 available remedy through the Third Level. *See Albino*, 747 F.3d at 1172. The burden
22 therefore shifts to Plaintiff to come forward with evidence showing that there was
23 something in his particular case that made the existing and generally available
24 administrative remedies effectively unavailable to him. *See id.*

25     There is no dispute that Plaintiff's appeal of the screen-out (Appeal Log. No.
26 1716217) was granted on March 12, 2018, and Plaintiff was directed to re-submit his
27 appeal. Moseley Decl. ¶ 13 & Ex. 6; Taituave Decl. ¶ 45 & Ex. F. The parties dispute
28 whether Plaintiff re-submitted his appeal after receiving the March 12, 2018 decision.

12

Defendants provide evidence that OOA has no record of Plaintiff re-submitting the appeal after OOA reversed its previous decision which screened out the appeal. Moseley Decl. ¶ 13.  Plaintiff, in a sworn declaration submitted with his Opposition, states that "following the Third Level Decision for TLR Case No. 1716217, [he] did timely re-submit[] Appeal Log No. ISP-D-17-00720 but never received a response from prison officials."  Taituave Decl. ¶ 45.

While Defendants argue that Plaintiff provides no evidence that he ever re-submitted his December 11, 2017 appeal, Defs. Reply at 2-3, Plaintiff's sworn statement is evidence.  With his sworn statement that he did re-submit his appeal as instructed by OOA but never received a response, Plaintiff raises a genuine issue of material fact as to whether the administrative remedy in this particular instance was effectively unavailable to him.  *See Cato v. Dumont*, No. 1:14-CV-00564-LJO-SAB (PC), 2015 WL 9659978, at *5 (E.D. Cal. Nov. 20, 2015) (finding that where Plaintiff has indicated that an appeal has been filed and no response has been received, Defendant cannot defeat that statement by simply stating there is no paper-trail or evidence), *report and recommendation adopted sub nom. Cato v. Silva*, 2016 WL 70324 (E.D. Cal. Jan. 6, 2016); *see also Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015) (finding defendants' demonstration of the prison's system of available administrative remedies did not rebut plaintiff's sworn statements that administrative remedies were not available to her because her filings were rejected by prison officials).

Because the Court cannot resolve this factual dispute without weighing the credibility of Plaintiff's sworn statement against Defendants' evidence that they have no records of Plaintiff re-submitting his appeal, summary judgment is not appropriate on the issue of exhaustion.  *See Ransom v. Aguirre*, No. 1:12-CV-01343 AWI DLB (PC), 2015 WL 5024867, at *7 (E.D. Cal. Aug. 25, 2015) (finding that summary judgment is not warranted where the evidence before the court consists of competing declarations, which raise an issue of witness credibility), *report and recommendation*

13

*adopted*, 2015 WL 13655451 (E.D. Cal. Sept. 30, 2015); *cf. Hubbard v. Houghland*, 471 F. App'x 625, 626 (9th Cir. 2012) (reversing dismissal based on failure to exhaust because the district court determined the credibility of Plaintiff's declaration without holding an evidentiary hearing).

Defendants request an evidentiary hearing if the Court determines that there is a triable issue of fact regarding whether Plaintiff properly exhausted his administrative remedies.  Defs. Mot. Reply at 3.  Because the Court will recommend that Defendants' motion for summary judgment be granted on the merits of Plaintiff's claims, an evidentiary hearing on the issue of exhaustion is not warranted.

**B.**   **Legal Standard for Section 1983 Claims**

42 U.S.C. § 1983 ("Section 1983") provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citation omitted).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

**C.**   **Analysis of Merits of Section 1983 Claims**

As an initial matter, the Court finds that Plaintiff has failed to present admissible evidence to raise a genuine issue of fact that Defendants McDowell, Frias, and Duenas are liable for any of the alleged constitutional violations.

14

1    It is undisputed that Defendant McDowell delegated the planning of the June
2    13-14 operation to others and was not himself present during the operation.  Although
3    Plaintiff asserts that a genuine dispute exists as to whether Defendants McDowell,
4    Frias, and Duenas were "aware of the unconstitutional searches during the operation"
5    and were made "aware the van was too hot" and of Plaintiff's complaints about the
6    visiting room, *see* Pl SDF Nos. 2, 6, Dkt. No. 123-2, Plaintiff has failed to present
7    any admissible evidence to support these assertions.  Plaintiff does not identify or
8    proffer evidence to suggest what involvement Defendants McDowell, Frias, or
9    Duenas had in training, supervising, or controlling the actions of the other Defendants
10   with respect to the events at issue in the case at bar.  Nor has Plaintiff established,
11   directly or otherwise, that Defendants McDowell, Frias, or Duenas acquiesced in any
12   constitutional violation.  As such, Plaintiff's assertions are insufficient as a matter of
13   law to hold Defendants McDowell, Frias, and Duenas liable.  *See*, *e.g.*, *Starr v. Baca*,
14   652 F.3d 1202, 1205-06 (9th Cir. 2011) (holding plaintiff may hold supervisor liable
15   in § 1983 suits "when culpable action, or inaction, is *directly attributed* to them[,]"
16   e.g., if supervisor acquiesced in constitutional deprivation or acted or failed to act in
17   manner that was deliberately indifferent to inmate's rights) (emphasis added).
18   Defendants' Motion is granted as to all claims against Defendants McDowell, Frias,
19   and Duenas.

20       Consequently, the following claims remain:

21       Plaintiff's Fourth Amendment strip search claim as to Defendant Alvarez;
22   Plaintiff's Eighth Amendment conditions of confinement (hot van) claim as to
23   Defendants Alvarez and Wilson; Plaintiff's Eighth Amendment conditions of
24   confinement (visiting room) claim as to Defendants Alvarez, Wilson, and Allen; and
25   Plaintiff's First Amendment retaliation (unlawful cell search and RVR) claim as to
26   Defendant Vasquez.  The Court addresses each claim in turn.

27   ///

28   ///

15

1    1.  <u>Unlawful Search (Defendant Alvarez)</u>

2        Plaintiff alleges that his Fourth Amendment right to be free from unreasonable

3    searches was violated when he was strip searched outdoors in the view of other

4    inmates and in the presence of a female officer.  SAC at 9.  Specifically, Plaintiff

5    alleges that he was:

6        made to stand in the dirt and gravel and 'strip out'; a process where

7        Plaintiff was ordered to remove all of his clothing while standing in the

8        dirt and gravel, run his fingers through his mouth and under his tongue

9        and through his hair, lift his penis and scrotum, turn around and lift his

10       feet and wiggle his toes, and bend over at the waist, spread his buttocks,

11       and cough twice under the illumination of a bright flash light, and bright

12       institutional lights surrounding the perimeter of the prison.

13   SAC at 10.

14       "Whether a search is reasonable under the Fourth Amendment requires a case-

15   by-case balancing of the need for the particular search against the invasion of

16   personal rights that the search entails . . . The required factors for courts to consider

17   include: (1) the scope of the particular intrusion, (2) the manner in which it is

18   conducted, (3) the justification for initiating it, and (4) the place in which it is

19   conducted."  *Byrd v. Maricopa County Sheriff's Dept*, 629 F.3d 1135, 1141 (9th Cir.

20   2011) (citation omitted).

21       The Court finds that there is no genuine issue of material fact regarding the

22   scope of the search and the manner and place in which it was conducted.  It is

23   undisputed that the search was visual and involved no physical contact of any kind.

24   Although a female correctional officer may have been present, Plaintiff has presented

25   no evidence to suggest her involvement was anything more than peripheral.  Searches

26   conducted in similar circumstances have been upheld as constitutional.  *See Byrd*,

27   629 F.3d at 1142 (noting that circuit has upheld searches where female officers

28   "occasionally *viewed* male inmates in various states of undress and regularly

conducted routine pat-down searches of inmates that did not involve intimate contact with the inmate's body" and where "infrequent and casual observation, or observation at [a] distance, ... are not so degrading as to warrant court interference") (emphasis in original) (citations omitted); *see also Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (rejecting Fourth Amendment claim where evidence failed to show female officer's "alleged presence at a search involving [the plaintiff] was anything but an isolated incident"); *see also Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997) (finding no Fourth Amendment violation where searches and "shower viewing" by female guards did not involve physical contact). Similarly, the fact that the search was conducted outside, where other inmates might have been able to witness it, does not render it unconstitutional. *See Thompson v. Souza*, 111 F.3d 694, 701 (9th Cir. 1997) (rejecting claim that strip searches must be conducted out of view of other prisoners and reaffirming that court would not question prison officials' judgment that conditions might require searches outside cells in order to protect the safety of the officers conducting them).

Nevertheless, Plaintiff challenges the purported justification for the search. He argues that the purpose of the raid was to punish and send a message to inmates who prison officials considered to be "shotcallers," and therefore was unreasonable. Dkt. No. 123 at 5. The Court finds there is undisputed evidence, however, that Defendants had a legitimate purpose behind planning and carrying out the mass cell search operation, namely, to combat the increased incidents of inmates avoiding searches and assaulting staff members who attempted to conduct searches and of inmate overdoses on controlled substances. Furthermore, it is undisputed that Plaintiff had previously been found in possession of contraband on at least one occasion and that contraband was actually found during the mass cell search, including in Plaintiff's own cell. For these reasons, the Court concludes that no reasonable factfinder could infer that the search was punitive in nature. *See*, *e.g., Byrd*, 629 F.3d at 1140 (holding that "[i]n the absence of evidence of an intent to punish, or evidence that [the

defendant]'s actions were unrelated to a legitimate governmental objective, the district court properly granted judgment as a matter of law.").

For all these reasons, the Court concludes that there is no genuine issue of fact as to the reasonableness of the search of Plaintiff and, therefore, GRANTS summary judgment on this claim.

2. Conditions of Confinement (Defendants Alvarez, Wilson, Allen)

Plaintiff alleges that his Eighth Amendment right to be free of cruel and unusual punishment was violated in two ways: first, by his confinement to a hot van with no air conditioning, where he found it difficult to breathe; and second by his restraint in handcuffs in the visiting room for over five hours with bright lights on and cold air blowing, making it impossible to sleep.

To prevail on an Eighth Amendment claim where the conditions of confinement are challenged rather than the confinement itself, a plaintiff must make two showings. First, the plaintiff must make an "objective" showing that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed.2d 271 (1991). Second, the plaintiff must make a subjective showing that the prison official acted "with a sufficiently culpable state of mind." *Id.*; *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). This means that a prison official may be found liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). Whether an official possessed such knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[.]" *Id.* at 842.

"Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Johnson v. Lewis*, 217 F.3d 726,

731 (9th Cir. 2000) (quoting *Wilson*, 501 U.S. at 298).  "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred."  *Id.*

>   *(a) Van Confinement*

Plaintiff alleges that, following his strip search:

> [He] was again handcuffed and placed in a van along with several other inmates where he was made to wait until the van was filled to capacity, at which point [he] was driven a short distance to the front entrance of the facility visiting room where he remained for over thirty minutes in the blistering heat while two prec[e]ding vans filled with inmates were processed[.]
>
> [¶]
>
> During this lengthy process, [he] was made to wait in a van which had absolutely no ventilation whatsoever; meaning, there was no air conditioning, and all of the van[']s windows were rolled up and shut, restricting [his] ability to breathe.

SAC at 10, 30.

Even accepting Plaintiff's claims that he was confined in a hot van with the windows rolled up and the doors closed for a period of up to 30 minutes, the Court finds that Plaintiff has not established he faced a substantial risk of serious harm sufficient to violate the Eighth Amendment.  *See, e.g., Dillman v. Vasquez,* 2015 WL 881574, at *9 (E.D. Cal. Mar. 2, 2015) (citations omitted) ("The case law suggests that a brief (*e.g.,* 30–minute–long) confinement in a hot patrol car does not violate the Fourth Amendment but an extended (*e.g.*, four-hour-long) confinement in a hot police car does violate the Fourth Amendment.").[5]

---

[5] Although at least one court has found that a 30-45 minute confinement in a van, where outside temperatures exceeded 100 degrees, presented a genuine issue of fact as to whether the inmate faced substantial risk of serious harm under Eighth

1    Furthermore, the Court finds that Plaintiff has failed to produce evidence to

2 raise a genuine issue of fact as to Defendants' culpable state of mind, i.e., by showing

3 that Defendant Wilson knew of but deliberately disregarded a substantial risk of

4 serious harm or that Defendant Alvarez was made aware of the inmates' complaints

5 about the conditions in the van and deliberately disregarded the substantial risk of

6 serious harm to them.   Although Plaintiff alleges that other inmates repeatedly

7 complained to Defendant Wilson that it was hot in the van and that there was no

8 ventilation, Plaintiff testified that Defendant Wilson responded by telling Plaintiff

9 and the other inmates to "hold on" and wait until they arrived at the visiting room

10 and that they were "almost there."   Dkt. No. 106-3 at 87.   Even assuming that

11 Defendant Wilson knew the inmates inside the van were hot and complaining about

12 lack of ventilation, this does not show that he deliberately disregarded a substantial

13 risk of serious harm to Plaintiff and the other inmates.   *See*, *e.g.*, *Allen v. Walker*,

14 2013 WL 3773888, at *6 and n.4 (E.D. Cal. July 17, 2013) (granting summary

15 judgment where plaintiff failed to raise genuine dispute of fact that defendants knew

16 of and disregarded excessive risk to health where plaintiff had been "held in the van

17 for approximately two and a half hours, and that during that time the outside

18 temperature rose to ninety-three degrees" and where defendants moved the van to a

19 shaded parking spot one hour after plaintiff was placed in the van),   *report and*

20 *recommendation adopted* 2013 WL 5424968 (E.D. Cal. Sept. 27, 2013), *aff'd* 586

21 Fed. App'x 428 (9th Cir. 2014).   As such, the Court finds that summary judgment is

22 appropriate as to all Defendants on this claim.

23    ///

24

25 Amendment, *see Douglas v. Smelosky*, 2014 WL 3534702, at *8-9 (S.D. Cal. July
16, 2014), in that case the inmate passed out and required medical attention after he
26 was released from the van.  By contrast, in the case at bar it is undisputed that Plaintiff
27 suffered no harm from his brief confinement other than feeling dehydrated and being
hot and uncomfortable.
28

*(b) Visiting Room Confinement*

Plaintiff alleges that after being removed from the vans, the inmates were processed into the visiting room and confined in mechanical restraints for over five hours while Defendants conducted searches of all the cells of every inmate involved in the raid.  SAC at 30.  He further alleges that:

> [He] was held in restraints from 9:00 p.m. to 2:30 a.m. where he was wantonly and unnecessarily deprived of sleep, with bright lights on and cold air blowing, where the restraints caused [him] to suffer pain and injury to his wrists and shoulders.

SAC at 30.

Even assuming that Plaintiff's confinement in cuffs for up to five hours in a cold visiting room where he was deprived of sleep was sufficiently serious to establish an Eighth Amendment violation, he has not provided any evidence to raise a genuine issue of fact with respect to Defendants' state of mind.  Although Plaintiff contends that he complained to Defendants Wilson and Allen in general about being confined in cuffs for five hours in the visiting room, it is undisputed that inmates were given the opportunity to have their cuffs removed for brief periods so that they could stretch out and walk around or use the restroom.  It is also undisputed that Plaintiff's cuffs were removed, he was allowed to stretch, and received attention from medical staff.  Under these circumstances, Plaintiff has failed to demonstrate that any factfinder could reasonably decide that Defendants were deliberately indifferent to his basic human needs or deliberately refused to meet those needs.

To the extent that Plaintiff is raising a separate claim regarding the use of handcuffs to keep him restrained, the Court similarly finds that he has failed to raise a genuine issue of fact that Defendants' use of force was excessive or that Defendants were deliberately indifferent to the pain he alleges was caused by being held in handcuffs.

///

21

The use of force by a prison official is "excessive" in violation of the Eighth Amendment where the force was not applied in a good-faith effort to maintain or restore discipline but, rather, maliciously and sadistically to cause harm. *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S. Ct. 995, 999, 117 L. Ed.2d 156 (1992). A prisoner alleging excessive force under the Eighth Amendment must show that "the officials involved acted with 'deliberate indifference' to the inmates' health or safety." *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S. Ct. 2508, 2514, 153 L. Ed.2d 666 (2002) (citing *Hudson*, 503 U.S. at 8). In determining whether the force used was excessive, the Court must consider "the extent of any injury, the need for the use of force, and whether that need supports the amount of force used," as well as "any efforts made to temper the severity of a forceful response." *Centeno v. Wilson*, 2011 WL 836747, at *3 (E.D. Cal. Mar. 4, 2011) (citing *Hudson,* 503 U.S. at 7). Finally, in evaluating the use of force, the Court must be mindful to accord to "prison administrators . . . wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 321–322 (1986)).

Once again, it is undisputed that Defendants handcuffed Plaintiff as part of a large-scale mass cell search; that Plaintiff was afforded the opportunity to have the cuffs removed for a few minutes so that he could stretch; and that nurses were on hand to assist any inmates who had complaints and Plaintiff received medical attention. Furthermore, Plaintiff has failed to submit any evidence from which a reasonable factfinder might infer that leaving him in handcuffs was unnecessary or done for punitive purposes. *See*, *e.g.*, *Centeno*, 2011 WL 836747, at *4 (granting summary judgment for defendants on prisoner's Eighth Amendment use of restraints claim where "restraints served a valid penological purpose" and "were used in a good faith effort to maintain security, discipline, and order in the prison[.]"); *c.f. Gregory v. Adams*, 2008 WL 486013, at *5 (E.D. Cal. Feb. 19, 2008) (denying summary

judgment where plaintiff "presented evidence that [the] defendant . . . ordered him to be handcuffed and placed in a holding cell in the dining hall and that he was not released, despite his continuous pleas and complaints of pain . . . until more than five hours had elapsed.").

For the above reasons, the Court GRANTS summary judgment to all Defendants on Plaintiff's Eighth Amendment claims.

3.  Unlawful Cell Search and False RVR (Defendant Vasquez)

Plaintiff alleges that Defendant Vasquez unlawfully retaliated against him in violation of the First Amendment by conducting a retaliatory cell search on July 31, 2017. SAC 26.  Plaintiff alleges:

> Defendant Vasquez's primary method of har[]assment, provocation, and retaliation [is] the heavy handed cell searches he conducts, where he makes it appear as if he's conducting a random procedural search, when in actuality, he thoroughly ransacks targeted cell, leaving personal property and paperwork in disarray.  Defendant Vasquez [conducted] one such retaliatory cell search on July 31, 2017. However, Plaintiff's cell had just been recently search[ed] by Bldg. Fl. Officer Hernandez . . . Plaintiff complained to Defendant Vasquez that this subsequent search within such a short time after the previous search amounted to har[]assment and retaliation, of which Defendant Vasquez disregarded.

SAC at 26.

To establish a claim for retaliation under First Amendment, a plaintiff must show: (1) he engaged in protected conduct; (2) a defendant state actor took adverse action against the plaintiff; (3) a causal connection exists between the protected conduct and the adverse action; (4) the adverse action is one that "would chill or silence a person of ordinary firmness from future First Amendment activities," whether or not the plaintiff was in fact "chilled"; and (5) the retaliatory action did not

1  advance a legitimate penological goal. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th
2  Cir. 2012).

3       With respect to Defendant Vasquez's July 31, 2017 cell search, Plaintiff has
4  not established that a causal connection exists between his asserted protected
5  conduct, i.e., filing grievances and Defendant Vasquez's action in searching his cell.
6  Nor has Plaintiff established that Defendant Vasquez's search of his cell did not
7  advance a legitimate penological goal.

8       Defendants have produced uncontroverted evidence that correctional officers
9  are required to conduct random cell searches. Additionally, Plaintiff has not
10 established by admissible evidence that Defendant Vasquez's July 31, 2017 search
11 of his cell was unusual or for the purpose of harassment.  Defendants have also
12 presented uncontroverted evidence that Defendant Vasquez found contraband in
13 Plaintiff's cell on July 31, 2017.

14      Because Plaintiff has failed to establish a genuine dispute of fact as to whether
15 Defendant Vasquez's cell search was improper or did not advance a legitimate
16 penological goal, the Court GRANTS summary judgment to Defendant Vasquez on
17 Plaintiff's retaliation claim.

18      For all of these reasons, the Court finds that Plaintiff has not met his burden to
19 point to competent and unequivocal evidence that raises a genuine dispute of material
20 fact.  Accordingly, the Court recommends that the Allen Motion and Defendants'
21 Motion be granted as to all of Plaintiff's claims.

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

24

## VI.   RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the District Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) granting Defendants' Motions on the merits as to Plaintiff's claims; and (3) dismissing these claims with prejudice.

DATED:  July 12, 2022

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.